STATE EX REL. Kathleen BRAUN, Petitioner-Appellant,†

v.

Kristine KRENKE, Mary Sheridan, Nona Switala and Walter Dickey, Respondents.

Court of Appeals

*No. 87–1089. Submitted on briefs March 23, 1988.—Decided July 28, 1988.*

(Also reported in 429 N.W.2d 114.)

† Petition to review denied.

For the petitioner-appellant the cause was submitted on briefs of *Kathleen Braun,* pro se, of Taycheedah.

For the respondents the cause was submitted on the brief of *Paul W. Schwarzenbart* and *Lee, Johnson, Kilkelly & Nichol, S.C.,* of Madison.

Before Dykman, Eich and Sundby, JJ.

DYKMAN, J. Kathleen A. Braun, an inmate at the Taycheedah Correctional Institute (TCI), petitioned for a writ of certiorari to review a Program Review Committee (PRC) decision and TCI's Superintendent's decisions on her inmate complaint and on her challenge regarding information in her inmate record. The circuit court ordered the writ quashed after concluding that respondents either followed proper procedures, or in the instances where they may have failed to do so, no harm resulted to Braun. The issues are: (1) whether Braun may seek judicial review through a writ of certiorari of the issues raised in her inmate complaint when she did not exhaust administrative remedies; (2) whether the Inmate Complaint Review System (ICRS) can be used to contest either a PRC decision or a decision on a challenge to an inmate record; and (3) whether there is substantial evidence to support the PRC's and the superintendent's determinations.

We conclude that: (1) Braun may not seek judicial review of the inmate complaint decision where further administrative remedies were available to her and she did not exhaust those remedies, nor demonstrate that the remedies would be futile; (2) the ICRS cannot be used to review either PRC decisions or a decision on a challenge to an inmate record; (3) there is substantial evidence to support the PRC's and the superintendent's determinations. We therefore affirm.

## FACTS

On October 8, 1985, Braun gave a guard a letter in which she complained about another guard's behavior, i.e., that the guard gave preferential treatment to a lesbian inmate. Among other things, Braun recounted in her letter a disturbance caused by an inmate while in or near the social services office, where Braun was on duty as an aide.

A staff member turned Braun's letter over to the security director, who investigated the letter's allegations. The security director placed Braun in temporary lockup pending the investigation, but released her the next day. During her investigation, the security director interviewed only those individuals involved in Braun's allegations, and interviewed none of Braun's witnesses. Based on her investigation, the security directory charged Braun with "lying about staff," a violation of Wis. Adm. Code, sec. HSS 303.271, and issued Braun a conduct report. After a hearing before the adjustment committee, held on October 17 and 18, 1985, the conduct report was dismissed because Braun had not publicized her allegations, a key element of the offense. There was no official determination of whether Braun was telling the truth,

although one of the adjustment committee members, social services director Kristine Krenke, stated that she knew that Braun had lied about everything.

On October 19, 1985, Krenke, Braun's supervisor at social services, administratively removed Braun from her job. In her memo to Braun, Krenke alleged that Braun had broken the unwritten work rule: "what happens in Social Services stays in Social Services." Krenke accused Braun of providing a written summary of the inmate incident in social services to an officer and of openly discussing the social services' inmate incident. On October 23, 1985, the PRC changed Braun's job, noting the following in its written summary: "[Braun] was recently administratively removed from her job as social service aide because she violated the conditions of [that] position by not keeping information that she became aware of on the job confidential."

Braun appealed to the superintendent, requesting that the information about her job removal be deleted from her record as erroneous. She also requested not to be placed again in the social services aide position. Braun admitted she had spoken to an officer about the incident in social services, but claimed that the officer already knew about it. The superintendent concluded the information was accurate and refused to delete it.

Braun wrote to Walter Dickey, Administrator of Wisconsin Division of Corrections, complaining about her treatment. Dickey suggested that she file an inmate complaint. On December 21, 1985, she filed a complaint alleging the following: (1) that for no reason she was put in temporary lockup pending investigation; (2) that the security director did not conduct an impartial investigation because she only questioned the persons involved in Braun's complaint, and ques-

tioned none of the several witnesses whose names Braun supplied; (3) that the security director wrote an incorrect conduct report since she was aware that a key element of the charge, publication, was missing; (4) that Braun was denied without reason a ten-day extension to prepare for the conduct report hearing; (5) that the verbatim statements of the persons involved in Braun's complaint verified many of Braun's allegations.

Braun alleged that because she was found not guilty at the conduct report hearing, Krenke had retaliated against her by removing her from her job and by attempting to remove her from honor housing. She requested that the remark on her October 23, 1985 PRC summary relating to her previous job removal be removed from her record as erroneous. She did not request removal of the information about the attempted housing change.

The inmate complaint investigator investigated Braun's complaint, and on January 29, 1986, recommended that the superintendent remove the job removal remark from Braun's record. On January 31, 1986, the superintendent refused, stating that the remark was accurate.

On February 8, 1986, Braun appealed the superintendent's decision to the Corrections Complaint Examiner. On February 24, 1986, the examiner acknowledged receipt of Braun's appeal, stating that if Braun did not hear from him within thirty-two working days, Braun should write to the secretary of the Department of Health and Social Services (DHSS). On April 18, 1986, Braun wrote to the investigator telling her that Braun had not yet heard from the examiner. Braun also asked whether she should wait longer. The investigator wrote back on April 21, 1986, telling

Braun that she had spoken to the examiner, and that he had told the investigator that he would try to get to Braun's complaint within the next couple of weeks. Braun never heard from the examiner, she never inquired further, and she never appealed to the DHSS secretary.

Braun later applied for a paralegal position. The Program Review Committee (PRC) interviewed her on October 22, 1986 but did not recommend Braun for the position because she had violated a work-related confidentiality rule while a social services aide. The PRC deferred considering Braun for the paralegal job "for a period of time to further evaluate her progress and ability to follow all rules, including those dealing with information (confidential)."[1]

On October 29, 1986, Braun appealed this PRC decision to the superintendent. On November 14, 1986, the superintendent denied Braun's appeal, citing her previous PRC summary, Krenke's October 19, 1985 memo and the superintendent's earlier decision on Braun's challenge regarding information in her previous PRC summary. On November 20, 1986, Braun petitioned for a writ of certiorari, requesting a review of all of the administrative actions complained of, and that they be declared void. Braun sought the removal of certain allegedly erroneous remarks from her record. Braun also sought an order prohibiting the use of administrative removals from housing units and PRC-approved programs in lieu of issuing conduct reports. The trial court ordered her writ quashed.

---

[1] The PRC did not follow proper procedure because Braun did not have an opportunity to talk to her social worker before the hearing. However, Braun decided not to pursue the breach of procedure through the inmate complaint review system, as allowed by Wis. Adm. Code, sec. HSS 310.04(3).

On appeal, Braun seeks review of three decisions: the superintendent's decision on Braun's challenge regarding information in her October 23, 1985 PRC summary, which was final on November 4, 1985, an inmate complaint decision, which arguably was final on or around March 31, 1986, and a PRC decision which was final on November 14, 1986.[2]

## STANDARD OF REVIEW

"The well-settled rule in Wisconsin is that on review by certiorari the reviewing court is limited to determining: (1) Whether the board kept within its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question." *State v. Goulette,* 65 Wis. 2d 207, 215, 222 N.W.2d 622, 626 (1974), *quoted in State ex rel. Palleon v. Musolf,* 120 Wis. 2d 545, 549, 356 N.W.2d 487, 489

---

[2]Braun's appeal is in some respects untimely. Braun petitioned for a writ of certiorari on November 20, 1986. A petition for a common law writ of certiorari to review a final agency order must be filed within six months, *State ex rel. Czapiewski v. Milw. C. S. Comm.,* 54 Wis. 2d 535, 539, 196 N.W.2d 742, 743 (1972). "In determining whether a party is guilty of laches ... the time may be calculated only from the point [her] right to relief accrues." *Id.* at 539, 196 N.W.2d at 744. Timeliness of the writ is not jurisdictional, however, and the defense of untimeliness is waived if not raised in a motion to quash. *State ex rel. Casper v. Board of Trustees,* 30 Wis. 2d 170, 175, 140 N.W.2d 301, 303–04 (1966). It appears that Braun's petition for a writ of certiorari is timely only with regard to the last PRC decision. However, the respondents did not raise the issue of untimeliness with regard to the first PRC decision or the inmate complaint decision. Therefore this defense is waived. *Id.*

(1984) (citations omitted). "The test on certiorari review is the substantial evidence test. The test is whether reasonable minds could arrive at the same conclusion reached by the Department." *Musolf*, 120 Wis. 2d at 549, 356 N.W.2d at 489 (citations omitted). Braun does not argue that the PRC or the superintendent lacked jurisdiction or did not act according to law.

Braun appealed the superintendent's decision on her inmate complaint to the Corrections Complaint Examiner. The examiner failed to make a recommendation to the division administrator within 37 calendar days, as required by Wis. Adm. Code, sec. HSS 310.09(10). The inmate complaint investigator's April 21, 1986 response to Braun's letter indicated that the examiner would try to get to her complaint within a few weeks. Seven months passed between this exchange and Braun's petition for a writ of certiorari on November 20, 1986. Braun never sought further clarification of the status of her appeal to the examiner.

Wisconsin Adm. Code, sec. HSS 310.09(10) provides that if the Corrections Complaint Examiner fails to act within the prescribed time, the superintendent's decision shall be affirmed. Wisconsin Adm. Code, sec. HSS 310.11(1) provides that an "inmate whose appeal ... was denied may, within 5 calendar days after receipt of the decision, appeal the decision to the secretary [of the DHSS]." The secretary may, within his or her discretion, accept an appeal filed later than five days. Wis. Adm. Code, sec. HSS 310.11(2). The DHSS secretary may "affirm, reverse, or modify the administrator's decision or may return the file to the administrator for additional proceedings, specifying

the investigation or action desired." Wis. Adm. Code, sec. HSS 310.11(4).

Certiorari lies only to review a final agency determination. *State ex rel. Czapiewski v. Milw. C. S. Comm.*, 54 Wis. 2d 535, 539, 196 N.W.2d 742, 744 (1972). Judicial relief will generally be denied until parties have exhausted their administrative remedies. *League of Women Voters v. Outagamie County*, 113 Wis. 2d 313, 320, 334 N.W.2d 887, 890 (1983). The exhaustion doctrine "provides state agencies with the opportunity to correct their own errors and prevents premature judicial incursions into agency activities," "promotes judicial efficiency" and often allows conflicts to be "resolved without resort to litigation." *Kramer v. Horton*, 128 Wis. 2d 404, 418, 383 N.W.2d 54, 59, *cert. denied*, 93 L. Ed. 2d 296 (1986). To escape the exhaustion requirement, Braun must prove that DHSS "either cannot or will not afford [her] adequate relief." *Id.* at 420, 383 N.W.2d at 60.

██

Braun has not alleged that DHSS is inherently biased, that it is unwilling or unable to hear her claim, or that an appeal to DHSS would have been futile. Braun has not explained her failure to appeal the inmate complaint decision to the DHSS secretary. Braun's failure to pursue her administrative remedies by means of a Wis. Adm. Code, sec. HSS 310.11(1) appeal to the DHSS secretary is fatal to her request that we review the inmate complaint decision. *See Castelaz v. Milwaukee*, 94 Wis. 2d 513, 530, 289 N.W.2d 259, 267 (1980) (failure to exhaust administrative remedies where they are not shown to be futile is fatal to complaint).

Pursuant to Wis. Adm. Code, sec. HSS 302.19(9), Braun appealed to TCI's superintendent with regard to both the October 23, 1985 and the October 22, 1986 PRC decisions. In Braun's first appeal, she sought removal of allegedly erroneous and damaging information from her record.[3] In Braun's second appeal she asked the superintendent to override the PRC's decision to postpone its consideration of Braun for a paralegal position because the PRC's decision was based on allegedly erroneous and damaging evidence.[4] The superintendent denied both of Braun's requests. The Wis. Adm. Code contains no provision for further agency review of the superintendent's decision on a challenge to an inmate record or on an appeal of a PRC decision. The superintendent's decisions are therefore the final agency determinations in these matters.[5]

Braun claims that she was unconstitutionally deprived of her liberty interest in a program assign-

[3]Braun seeks to delete information on her record which relates to Krenke's attempt to change Braun's housing status. Braun did not seek this relief through administrative channels. Therefore we deny her relief on this count for the same reasons as stated above.

[4]The October 22, 1986 PRC summary contained the following reason for not recommending Braun for a paralegal position she had applied for: "Our main concern is that she had been removed from her Gower Aide Position by the Program Review Committee on October 23, 1985, as a result of violating work rules for that job. Reports indicated specifically that Ms. Braun had discussed information that she had become aware of while working as a Gower Aide with other persons who should not have been advised the information."

[5]An inmate may not use the ICRS to seek review of PRC decisions and decisions on a challenge to an inmate record. Wis. Adm. Code, sec. HSS 310.04(2)(b) and (e).

ment because she did not receive due process. Assuming, without deciding, that Braun had a constitutionally protected liberty interest in a program assignment, we conclude that the Program Review Committee hearing and the superintendent's review of the PRC summary provided Braun with due process.

In denying Braun's appeal of the second PRC decision, the superintendent wrote:

> I have reviewed the PRC comments of 10/22/86. I note the main concern in not recommending your name to the LAIP staff was based on the fact that you had been removed from your Gower aide position by the Program Review Committee on 10/23/85, as a result of violating work rules for that job. Their decision seems to be consistent with the reasons for your administrative removal from your job as social service aide noted in Ms. Krenke's memo to you dated 10/19/85. I further note my reply to your letter of 10/24/85, appealing the PRC decision of 10/23/85. My reply dated 10/31/85, is supportive of the reasons as to your removal from your job.
>
> Having reviewed the above information and current PRC comments of 10/22/86, I again concur with their decision.

The superintendent based her decision to deny Braun's appeal in part on her prior denial of Braun's earlier appeal in which she challenged certain information in the October 23, 1985 PRC summary.

Central to the disposition of this case is the validity of the information found in the October 23, 1985 PRC summary. If "the evidence [is] such that [the superintendent] might reasonably make the ... determination" that the information was accurate, *Goulette,* 65 Wis. 2d at 215, 222 N.W.2d at 626, then the

superintendent's denial of Braun's appeal in both instances must be affirmed.

The October 23, 1985 PRC decision contained the following language: "[Braun] was recently administratively removed from her job as social service aide because she violated the conditions of [that] position by not keeping information that she became aware of on the job confidential." This information was based on Krenke's October 19, 1985 memo to Braun:

> The reason for this [administrative] removal is that you disseminated information, which you became aware of while conducting your duties as Social Service Aide. This information concerned another inmate. Specifically you provided a written summary of an incident regarding Inmate Beattie to Officer Longdin, and you openly discussed the Beattie situation. I feel this is a violation of a condition of the Social Service Aide position (what happens in Social Service stays in Social Service), and more important, an indication of your inability to deal with work-related information in a confidential nature.

Braun challenged the accuracy of the information in the PRC summary in an appeal to the superintendent.[6] The superintendent refused to strike the language complained of from the PRC summary, basing her decision on Krenke's memo and her conversations with Krenke.[7]

---

[6]Braun specifically requested not to be placed in the social service aide position again. On appeal, Braun asserts that this was not totally voluntary. However, Braun abandoned this complaint on appeal to the superintendent. She cannot now raise it on appeal.

[7]We have found no explanation in the Code regarding the powers the superintendent has when reviewing a challenge to an

Both parties concede that the work rule Braun allegedly violated is unwritten. Krenke's memo to Braun states the rule as "what happens in Social Service stays in Social Service." The question on review is as follows: "Is the evidence in the record such that the superintendent might reasonably make the determination that the information in the PRC summary was accurate?" For the superintendent's determination to be supported on appeal there must be substantial evidence in the record for the following facts: (1) that Braun knew the rule; (2) that the event happened in social services; (3) that Braun disseminated information regarding the event outside social services; and (4) that the information was work-related.

There is no statement in the October 23, 1985 PRC decision that Braun knew the rule.[8] However, in her October 19, 1985 memo to Braun, Krenke states that following this rule was a job condition. Krenke's memo provides substantial evidence that compliance with the unwritten rule was a job condition, and that

inmate's record, in this case to certain language in Braun's October 23, 1985 PRC summary. It appears that the superintendent's review in this case was not limited to the record before the PRC, but involved discussions with Krenke. However, Braun does not raise the issue of the extent of the superintendent's review and we decline to consider it *sua sponte*. We note that a superintendent's decisions on these matters are excluded from the requirements of ch. 227. Sec. 227.03(4), Stats.

[8]Braun claims she was unaware of the rule, and that an unwritten rule is unconstitutionally vague. She also argues that the due process requirements for disciplinary rules apply equally to work rules. We need not reach these arguments, because there is evidence that Braun did know the rule. We note, however, that the Code excludes a change of program assignment or a housing change as forms of discipline. Wis. Adm. Code, sec. HSS 303.01(2).

therefore one who works at the job should know the rule. Braun denies she knew the rule. Notwithstanding Braun's denial, because following this rule was a job condition, this is evidence from which the superintendent could have reasonably concluded that Braun knew the rule.

In her appeal of the October 23, 1985 PRC decision to the superintendent, Braun admits that the event happened in the social service area.

With regard to whether Braun disseminated the information, Braun admits that the following conversation took place: "I simply asked Ms. Wendell, 'How's Jackie?' She took the conversation from there, the main thrust of it being 'if Jackie had done what I suggested, none of this would have happened.'" This evidence is such that the superintendent could reasonable determine that Braun discussed the social services incident with someone outside of social services, i.e., Ms. Wendell.

As to whether the information was work-related, Braun claims the information was not work-related because it was related to a public outburst in a public waiting area. The superintendent told Braun that social services director Krenke stated that aides were specifically forbidden to discuss what they see or learn at the worksite, and that it did not matter how many other people saw the incident. This evidence is such that the superintendent could reasonably determine that the information was work-related.

██

We conclude that "taking into account all the evidence in the record, 'reasonable minds could arrive at the same conclusion as the [superintendent].'" *Madison Gas & Elec. Co. v. Public Serv. Comm.,* 109 Wis. 2d 127, 133, 325 N.W.2d 339, 342–43 (1982)

(citation omitted). Therefore, the superintendent's decision not to remove the complained of language from Braun's PRC summary "was not arbitrary, oppressive or unreasonable and represented [her] judgment not [her] will, since there was substantial evidence in the record which would lead reasonable minds" to reach the same conclusion. *Musolf,* 120 Wis. 2d at 559, 356 N.W.2d at 494.

Because the information in the first PRC summary is valid,[9] it provides a reasonable basis for the second PRC decision to defer consideration of Braun for the paralegal position. We therefore affirm that decision.

*By the Court.*—Order affirmed.

SUNDBY, J. (*dissenting*). Because I do not believe that the superintendent's decision is supported by substantial evidence, I dissent. "Evidence that is relevant, probative, and credible, and which is in a quantum that would permit a reasonable factfinder to base a conclusion upon it, is 'substantial' evidence." *Princess House, Inc. v. DILHR,* 111 Wis. 2d 46, 54, 330 N.W.2d 169, 173 (1983). The superintendent's decision was based upon Krenke's self-serving statements and uncorroborated hearsay. An administrative body may not base an administrative finding on uncorroborated

---

[9]Braun also argues the record demonstrates that Krenke, who administratively removed Braun from her job, also was a member of the PRC which reviewed that removal. Braun argues that this deprives her of the right to be tried by an unbiased tribunal. However, the record shows that the mistake regarding the PRC membership was corrected, and that Krenke was not on the PRC in question. Braun does not argue that this correction is invalid or erroneous, and therefore we review this issue no further.

hearsay. *Village of Menomonee Falls v. DNR,* 140 Wis. 2d 579, 610, 412 N.W.2d 505, 518 (Ct. App. 1987).

The superintendent should have accepted the recommendation of the inmate complaint investigator that Braun's request be honored to have the program review committee's negative comments removed from her file. It is regrettable that so much institutional and judicial effort has been expended on a problem which could have been easily resolved.