STATE of Wisconsin EX REL. Adrian LAURICH,
Petitioner-Appellant,

v.

Jon LITSCHER, Secretary, and Mickey Thompson,
Warden, Respondents-Respondents.

Court of Appeals

*No. 02–2479. Submitted on briefs April 10, 2003.—Decided
July 15, 2004.*

2004 WI App 150

(Also reported in 686 N.W.2d 668.)

770

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Adrian Laurich*, pro se, and the supplemental briefs of *Virginia M. Antoine* of *Habush Habush & Rottier, S.C.*, Milwaukee.

On behalf of the respondents-respondents, the cause was submitted on the brief of *Mary Batt*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general, and the supplemental brief of *Hillary Schwab*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Dykman, Vergeront and Lundsten, JJ.

¶ 1. LUNDSTEN, J. This appeal raises the ques-

tion whether the circuit court properly dismissed the petition for a writ of certiorari because inmate Laurich failed to exhaust his administrative remedies. The respondents contend that Laurich failed to exhaust because he failed to file a timely complaint under the Inmate Complaint Review System. We affirm the circuit court's order dismissing the petition. As discussed in greater detail below, the institution complaint examiner properly rejected Laurich's complaint as late because Laurich failed to reasonably apprise the complaint examiner, by means of the complaint itself, of the facts Laurich believed constituted "good cause" for his late filing.

## *Background*

¶ 2. Adrian Laurich allegedly engaged in misconduct while an inmate at Winnebago Correctional Center. In November 2001, a prison disciplinary committee issued a decision against Laurich finding that he had violated several rules. Laurich appealed the decision to the warden and, on December 17, 2001, the warden signed and issued a decision affirming the decision of the disciplinary committee. Sometime prior to issuance of the warden's decision, Laurich was transferred to Oshkosh Correctional Institution. Accordingly, the warden's decision was transmitted to Laurich by inter-institution mail.

¶ 3. Laurich attempted to challenge the warden's decision by a complaint through the Inmate Complaint Review System. He filed his complaint on January 14, 2002, twenty-eight days after the date the decision itself indicates it was issued.

¶ 4. On January 16, 2002, an institution complaint examiner rejected Laurich's complaint because the complaint examiner found that the complaint was

filed late under an administrative rule requiring that complaints be filed "within 14 calendar days after the occurrence giving rise to the complaint." WIS. ADMIN. CODE § DOC 310.09(6).[1] There is no dispute that the "occurrence" in this case was the issuance of the warden's decision. The institution complaint examiner assumed that Laurich would have received the warden's decision "shortly" after it was issued. The examiner wrote:

> The [warden's decision] was signed on 12/17/01. [Laurich] would have received his copy shortly thereafter. He filed this complaint on 1/14/02, or 28 days after the decision. An Inmate Complaint must be filed within 14 calendar days of the date of the occurrence giving rise to the complaint. If you wish to appeal this rejection, you may request the form through this office.

¶ 5. Laurich timely appealed the institution complaint examiner's decision under WIS. ADMIN. CODE § DOC 310.13(1) (1998). Pursuant to this code section, a corrections complaint examiner reviewed Laurich's appeal. In his request for review, Laurich asserted that he had not received a copy of the warden's decision until January 2, 2002. Laurich stated he did not know what caused the delay, but argued that the fourteen-day time limit should not start to run until he received a copy of the warden's decision.

¶ 6. The corrections complaint examiner made at least one inquiry. She determined that the warden's decision was mailed to Laurich at Oshkosh Correctional

---

[1] Laurich filed his complaint in January 2002, and changes to WIS. ADMIN. CODE § DOC chapter 310 have been made in the interim. Most notably, § DOC 310.09(3) has been renumbered § DOC 310.09(6). To make application of our decision less confusing, we cite to the current code provisions unless otherwise noted.

the day after it was issued. The corrections complaint examiner recommended dismissal of the appeal, writing:

> Investigation and contact with the Northern Sector Chief showed that the appeal decision was mailed to the complainant on 12/18/01. The [corrections complaint examiner] has no reason to believe the complainant did not get his decision within a few days after that. As such, his complaint was untimely filed and in agreement with the rejection summary of the [institution complaint examiner], it is recommended this complaint be dismissed.

The Secretary of the Department of Corrections accepted the recommendation of the corrections complaint examiner and dismissed the appeal.

¶ 7. Laurich then commenced this action by filing a petition for a writ of certiorari. In his petition, Laurich again asserted that he did not receive the warden's decision until January 2, 2002, and asserted that the reason was delays caused by the Christmas and New Years holidays. The respondents moved to quash the petition, asserting that by filing his appeal from the warden's decision after the fourteen-day time period Laurich had failed to exhaust his administrative remedies. The circuit court agreed. It declined to reverse the department's determination that Laurich had filed his appeal late based on Laurich's mere assertion that he did not receive the warden's decision shortly after it was issued.

### Discussion

¶ 8. The standards of review applicable here were well summarized in *State ex rel. Freeman v. Berge*, 2002 WI App 213, 257 Wis. 2d 236, 651 N.W.2d 881:

> Resolution of these issues requires that we interpret the statutes and regulations that govern review of

DOC decisions and analyze the petition to determine whether it states a claim for relief. These are all questions of law, which we review de novo. When deciding whether a petition or complaint states a claim for relief, we take all facts pleaded and all inferences that can be reasonably derived from those facts as true. We dismiss a petition or complaint as legally insufficient "only if it is quite clear that under no conditions can [a petitioner or] a plaintiff recover."

*Id.*, ¶ 12 (citations omitted).

■■■

¶ 9. The parties agree that the question whether Laurich exhausted his administrative remedies turns on the timeliness of the complaint he filed with the institution complaint examiner. If the institution complaint examiner properly rejected Laurich's complaint as untimely, then Laurich has failed to exhaust his administrative remedies and his action was properly dismissed. Moreover, if the failure to exhaust can be determined from the petition, a court may dismiss the petition. *See id.*, ¶¶ 12–13 ("[An inmate] is required by Wis. Stat. § 801.02(7)(b) to exhaust all available administrative remedies that DOC has promulgated by rule, and he must plead satisfaction of this requirement as one component of stating a claim for relief. Therefore, the circuit court in this case properly reviewed the petition, including the attachments, to determine whether it alleged facts from which the court could conclude that [the inmate] had exhausted available administrative remedies." (citations omitted)).

¶ 10. The first step in the Inmate Complaint Review System is the filing of a complaint under Wis. Admin. Code § DOC 310.09. Subsection (6) of § DOC 310.09 imposes a fourteen-day time limit for filing complaints:

> An inmate shall file a complaint within 14 calendar days after the occurrence giving rise to the complaint, except that the institution complaint examiner may accept a late complaint for good cause.

Thus, the fourteen-day time limit is triggered by an "occurrence," and the parties agree that the occurrence in this case was the issuance of the warden's decision. Further, even a late-filed complaint may be accepted "for good cause."

¶ 11. In this case, the institution complaint examiner rejected Laurich's complaint because it was filed twenty-eight days after the "occurrence," that is, the issuance of the warden's decision. The institution complaint examiner assumed that Laurich would have received the warden's decision shortly after it was issued, and further assumed that nearly twenty-eight days had passed before Laurich filed his complaint. After his complaint was rejected, Laurich appealed to the corrections complaint examiner and asserted, for the first time, that he had not received a copy of the warden's decision until sixteen days after it was issued.

¶ 12. Laurich first asks this court to adopt a tolling rule providing that the fourteen-day time limit is tolled from the date a warden issues a decision until the date the decision is received by the inmate. Laurich then focuses his attention on the authority of the institution complaint examiner and the corrections complaint examiner to investigate and make factual findings regarding when Laurich received the warden's decision. In part, Laurich argues that the institution complaint examiner and the corrections complaint examiner in this case made an unwarranted factual assumption about when the warden's decision was delivered to Laurich. Further, Laurich argues that administrative code provisions prohibited factual reso-

776

lution at the agency level of when the warden's decision was delivered to him. Laurich asserts that "[t]he only forum in which an inmate can have [this type of factual dispute] decided is the circuit court." Laurich argues that the petition he filed in the circuit court should have survived the respondents' motion to dismiss because the circuit court was obligated to accept the factual assertions in the petition as true, and his petition included the assertion that he filed his complaint within fourteen days of receiving the warden's decision.

¶ 13. The respondents contend that the corrections complaint examiner acted within her authority by conducting an investigation and making a reasonable factual inference that Laurich received the warden's decision shortly after it was issued and that Laurich filed his complaint well after the fourteen-day time limit. The respondents argue that, under the deferential standard applied to agency decisions, the circuit court properly dismissed the petition. Further, the respondents argue that resolution of a factual dispute regarding the date Laurich received the warden's decision is beyond the scope of certiorari review and, therefore, the circuit court was confined to the administrative record.

¶ 14. We conclude that the resolution of this issue turns, for the most part, on a topic not discussed by either party, namely, the proper interpretation of the time-limit language in Wis. Admin. Code § DOC 310.09(6).[2]

---

[2] Laurich proceeded pro se in the circuit court and initially on appeal. We decided to appoint counsel to present supplemental briefing, and Virginia M. Antoine graciously agreed to accept this appointment on a pro bono basis. Our order directed the

■

¶ 15. The time-limit language in Wis. Admin. Code § DOC 310.09(6) plainly advises inmates that an "institution complaint examiner may accept a late complaint for good cause." The warden's decision—issued on a standard form with a date box—shows the "Date of Decision" as "12–17–01." When an inmate files a complaint knowing it is late, § DOC 310.09(6) effectively advises the inmate that his or her complaint will only be accepted if the institution complaint examiner determines that there is "good cause" for the late filing. Consequently, if the inmate believes there are facts constituting "good cause," he or she must advise the institution complaint examiner by means of including the asserted facts in the complaint. The failure to reasonably apprise the institution complaint examiner, by means of the complaint itself, of the facts the inmate believes constitute "good cause" waives the inmate's right to later complain that his or her complaint should have been accepted late for "good cause."

¶ 16. Our interpretation flows from the language of Wis. Admin. Code § DOC 310.09(6) and promotes the purpose of both the time limit and the "good cause" exception. For example, in this case there is no indication that the institution complaint examiner had any idea that Laurich was taking the position that the warden's decision had not been delivered to Laurich until January 2, 2002. Since the rule's directive that an "institution complaint examiner may accept a late complaint for good cause" necessarily authorizes the institution complaint examiner to conduct an investigation

parties' attention to several issues, but did not directly suggest that Laurich had an obligation to put "good cause" information in his complaint.

to determine whether "good cause" exists, our interpretation of the provision promotes a timely investigation of the inmate's claim.

█

¶ 17. Laurich seemingly argues that an institution complaint examiner may never reject a late-filed complaint because the examiner has no authority and, therefore, no ability to conduct the investigation necessary to determine when the inmate received the decision. More specifically, Laurich contends that the language of Wis. ADMIN. CODE § DOC 310.11(3) (1998), in effect at the time he filed his complaint, prohibited the institution complaint examiner from looking to information outside the "record" when determining whether there was "good cause."

¶ 18. The version of § DOC 310.11(3) in effect when Laurich filed his complaint reads, in part: "the investigation of complaints under s. DOC 310.08(3) shall be limited to the record."[3] It is agreed that Laurich's complaint was filed pursuant to § DOC 310.08(3). However, we construe the language of § DOC 310.11(3) as applying to the institution complaint examiner's investigation of the *merits* of a complaint, not whether "good cause" exists.

█

¶ 19. Laurich's interpretation of § DOC 310.11(3) runs headlong into the language of § DOC 310.09(6) which plainly authorizes an institution complaint examiner to accept a late-filed complaint. We think it obvious that § DOC 310.09(6) authorizes the institution complaint examiner to make inquiries to determine

---

[3] The current version of Wis. ADMIN. CODE § DOC 310.11(3) reads, in pertinent part: "the processing of complaints under s. DOC 310.08(3) shall be limited to review of the record."

whether "good cause" exists, including whether there was a delay in the delivery of a decision. *See Freeman*, 257 Wis. 2d 236, ¶ 18 ("Alternatively, the [institution complaint examiner] may have decided that the complaint was not filed within fourteen days from the 'occurrence,' but [the inmate] had good cause for not doing so within fourteen days.").[4]

¶ 20. Laurich asks this court to adopt a tolling rule providing that the fourteen-day time limit is tolled from the date a warden issues a decision until the date the decision is received by the inmate. Laurich points out that inmates typically have no control over when a decision is delivered to them and, therefore, it is unfair to adhere to a fourteen-day time limit without regard to when an inmate receives a decision. Ignoring a delivery delay, Laurich notes, may result in an inmate having little or no time to prepare and file a timely complaint. Laurich asks this court to adopt the "no control" reasoning employed in cases such as *State ex rel. Shimkus v. Sondalle*, 2000 WI App 238, 239 Wis. 2d 327, 620 N.W.2d 409 (*Shimkus I*). The State does not respond to this argument.

¶ 21. A court-imposed tolling rule is unnecessary. Unlike *Shimkus I*, where the inmate's action was statutorily barred if not commenced within a specified time limit, *id.*, ¶ 2, here an institution complaint examiner and, ultimately, the secretary, has discretion

---

[4] We note that Wis. Admin. Code § DOC 310.11(5)(d), effective December 1, 2002, provides that an institution complaint examiner may reject a complaint when "[t]he inmate submitted the complaint beyond 14 calendar days from the date of the occurrence giving rise to the complaint and provides no good cause for the [institution complaint examiner] to extend the time limits."

to accept a late-filed complaint for "good cause." We conclude that a complaint examiner's "good cause" determination must include consideration of the time between the issuance of a warden's decision and the time the decision is made available to the inmate, if the inmate advises the institution complaint examiner of such alleged "good cause" in his or her complaint. *See* ¶ 15, above. Of course, an institution complaint examiner may consider this time period even if there is no mention of it in the complaint.[5]

■

¶ 22. We now consider whether it is fair to Laurich to apply our interpretation of WIS. ADMIN. CODE § DOC 310.09(6) in this case. We conclude that it is. Laurich knew when he filed his complaint that it was being filed twenty-eight days after the issuance of the warden's decision and well beyond the fourteen-day time limit. Laurich also knew that § DOC 310.09(6) authorizes an institution complaint examiner to accept a late complaint for "good cause." Consequently, Laurich knew or should have known that it was incumbent on him to advise the institution complaint examiner of facts constituting "good cause" for the late filing.

---

[5] Laurich speaks in terms of the date the inmate "receives" the warden's decision. The record before us, however, does not indicate how mail is delivered to inmates. We purposefully speak in terms of the time the decision is made "available" to an inmate, but do not specify the meaning of that term in part because of the lack of factual development regarding prison delivery systems. Suffice it to say here that the purpose of the "good cause" provision is served by looking to the date the department makes a decision available to an inmate, even if the inmate knows of the availability and chooses not to take advantage of that availability.

¶ 23. Our decision to apply our interpretation of the code provision to Laurich is supported by *State ex rel. Shimkus v. Sondalle*, 2000 WI App 262, 240 Wis. 2d 310, 622 N.W.2d 763 (*Shimkus II*). In *Shimkus II*, we held that when an inmate seeks the benefit of a tolling rule applied to a late-filed petition for a writ of certiorari, the inmate must present proof justifying application of the tolling rule in a particular form: "by affidavit or other evidentiary submission." *Id.*, ¶ 2. We applied that rule to Shimkus and affirmed the denial of his petition even though no prior authority plainly required the sort of proof discussed in *Shimkus II*. We explained:

> We have considered whether it is fair to Shimkus to apply in this case the requirement that he present evidence of the date on which he deposited the petition in the institution mailbox, and we conclude that it is. Shimkus's brief in opposition to the State's motion in the circuit court shows he understood that, under his theory of the law, the date on which he deposited the petition in the institution mailbox was the critical date for determining whether it was timely filed. He may at that time have believed the copy of the disbursement request form was evidence of that date, but, when the State in its reply brief asserted it was not, Shimkus was put on notice the form might not adequately prove the critical date. He had the opportunity then to submit an affidavit supplying additional facts. Alternatively, he might have submitted prison regulations or procedures, of which the court could take judicial notice, that would, coupled with the form, establish the date on which he signed and dated the disbursement request was also the date on which he put the certiorari petition in the institution mailbox for forwarding to the Dodge County Clerk of Courts. However, Shimkus did neither.

*Id.*, ¶ 16. Similarly here, Laurich was on notice that he was filing a late complaint and that his complaint would be rejected if the institution complaint examiner did not find "good cause."

¶ 24. Accordingly, we affirm the circuit court, but use different reasoning. We conclude that when Laurich failed to assert in his complaint that he did not receive the warden's decision until January 2, 2002, and indicate that this fact constituted "good cause" for his late-filed complaint, the institution complaint examiner properly rejected the complaint as late and Laurich waived his right to make his "good cause" argument in subsequent proceedings. Laurich's failing is apparent from a review of the attachments to his petition for a writ of certiorari. The attached complaint shows that Laurich made no assertions suggesting "good cause" for accepting his late-filed complaint. It follows that Laurich failed to exhaust his administrative remedies, and the circuit court properly dismissed his petition.

*By the Court.*—Order affirmed.